Michael Catalano, J.
After trial, the jury returned a verdict in favor of the infant (wheelchair borne) plaintiff for $10,500 and for no cause of action against her father.
A motion to dismiss the complaint had been made at the close of the evidence; the court reserved decision, then after the verdicts were reported, the court granted the motion.
The plaintiffs’ theory was that defendant maintained a salt barrel near a street light pole on which a pedestrian traffic-control button regulated the use of a crosswalk in front of a school; that the salt was used to melt snow and ice which caused holes to appear in the sidewalk near the curb; that the 16-year-old infant plaintiff (suffering from congenitally brittle bones that were prone to break) was pushed in her wheelchair by a 13-year-old girl, October 12, 1962, a dark evening at 8:00 p.m., weaving in and out around 20 to 30 children, when “ something ” was hit, the wheelchair tipped, and Mary fell out of the wheelchair; that no one saw the point of accident, before or at the time; that there was no safety belt or bar to keep Mary in the chair to prevent her from falling out; that Mary did not say she had her hands on the arms of the chair, although the other girl had both her hands on the chair’s rear handles; that Mary had fallen out of that chair at her home about 200 times, breaking bones, and 50 times the fractures were serious.
*958 Section 362 of article 20 of the Charter of the City of Buffalo provides “ Conditions Precedent To Action, ” in part, as follows: “No civil action shall be maintained against the city for damage or injuries to person or property sustained in consequence of any street, part or portion of any street including the curb thereof and any encumbrances thereon or attachments thereto, tree, bridge, viaduct, underpass, culvert, parkway or park approach, sidewalk or crosswalk, pedestrian walk or path, or traffic control sign or signal, being defective, out of repair, unsafe, dangerous or obstructed, or in consequence of the existence or accumulation of snow or ice upon any street, bridge, viaduct, underpass, culvert, parkway or park approach, sidewalk or crosswalk, pedestrian walk or path, unless previous to the occurrence resulting in such damage or injuries written notice of such alleged condition relating to the particular place and location was actually given to the city clerk and there was a failure or neglect within a reasonable time thereafter to remedy or correct the alleged condition complained of. ’ ’
The only time written notice is not necessary is when the city caused and maintained the condition, such as where: (1) The city placed a metal cover over a water supply installation with a depression in the road pavement around it (Appelbaum v. City of Long Beach, 8 A D 2d 818); (2) the city poured water on a fire, ice formed, upon which the plaintiff fell three days later (Crandall v. City of Amsterdam, 254 App. Div. 39, affd. 280 N. Y. 527); (3) the city placed a cast iron cover over a survey monument on the sidewalk 40 years before (Filsno v. City of Rochester, 10 A D 2d 663).
Here, no written notice was given, as required. The mere placing of salt upon the public sidewalks in a barrel for use at a crosswalk is not negligence, even though over indeterminate years or months the deterioration of a sidewalk is accelerated thereby.
The court judicially knows that salt is used upon the public highways and sidewalks, resulting in less accidents, rather than more. The plaintiffs’ theory would result in the reductio ad absurdum of prohibiting the use of salt on public ways to melt snow and ice under any and all circumstances.
The ultimate condition of the sidewalk was the result of wear and tear, not the affirmative act of the city in causing, creating and maintaining it so that the city should be responsible for its own act rather than that of others.
Here, the causes of the sidewalk holes were many — manner of construction by third persons, use by third persons, the passage of time.
*959 The sight of Mary in her wheelchair, a lovely object of pity, was the only reasonable basis for the verdict for her and the verdict against her father.
Under the old practice (Civ. Prac. Act, § 457-a, snbd. 3) the court encouraged defendant to move for a dismissal of the complaint at the close of the evidence so that the court could reserve its power to grant it by saying, “ Decision reserved. ”
Under the new practice (CPLR 4404 subd [a]), neither the motion to dismiss nor the court’s pronouncement is necessary because the court may dismiss “on its own motion. ” Nevertheless, it is still good practice so to move and reserve because it gives plaintiff’s counsel notice that he should be prepared to argue the motion after the verdict when the court will pass upon the reserved motion. Also, in a very close case, it appears advisable to allow the jury to find a verdict because a new trial can be avoided even if the nisi prius ruling is reversed on appeal. Whether or not the motion to dismiss is made, the court now may, in any event, set aside the verdict and direct judgment for any party entitled to judgment as a matter of law. (Ibid., supra.)
In the words of Weinstein-Korn-Miller (vol. 4, par. 4404.04): ‘ ‘ In the unusual case where the court finds it desirable to act without a motion, the court should grant an affected party the right to be heard. In any event, a motion for reconsideration may be made. The possibility of injustice is greater under the old rule where the judge had to pronounce the words ‘ decision reserved ’ or lose the power to act on his own initiative. ”
The motion to reconsider is granted; the motion 1 ‘ for reinstatement of the jury’s verdict on behalf of the infant plaintiff ” is denied, without costs.